# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HEATHER NEEDHAM**<br>9 Brighton Way<br>Chester Springs, PA 19425<br><br>*Plaintiff,*<br><br>vs.<br><br>**COVANTA ENERGY, LLC**<br>445 South Street<br>Morristown, NJ 07960<br><br>-and-<br><br>**COVANTA ENERGY GROUP, LLC**<br>445 South Street<br>Morristown, NJ 07960<br><br>-and-<br><br>**COVANTA HOLDINGS CORPORATION**<br>445 South Street<br>Morristown, NJ 07960<br><br>-and-<br><br>**COVANTA ENGINEERING SERVICES, LLC**<br>445 South Street<br>Morristown, NJ 07960<br><br>-and-<br><br>**COVANTA WALLINGFORD ASSOCIATES, INC.**<br>445 South Street<br>Morristown, NJ 07960<br><br>-and-<br><br>**DELAWARE VALLEY RESOURCE RECOVERY FACILITY**<br>445 South Street<br>Morristown, NJ 07960<br><br>-and-<br><br>**COVANTA DELAWARE VALLEY, LP**<br>445 South Street<br>Morristown, NJ 07960 | CIVIL ACTION<br><br>NO. _____<br><br>**JURY TRIAL DEMANDED** |

-and-

**COVANTA PROJECTS, LLC**
445 South Street
Morristown, NJ 07960

-and-

**COVANTA BRISTOL, INC.**
445 South Street
Morristown, NJ 07960

*Defendants.*

# FIRST AMENDED CIVIL ACTION COMPLAINT

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Heather Needham (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against (*hereinafter* referred to as "Defendants" when referred to collectively) for violations of Title VII of the Civil Rights Act of 1964 ("Title VII - 42 U.S.C. §§ 2000d *et. seq.*) and the Pennsylvania Human Relations Act ("PHRA").[1]  As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this State and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial

---

[1] Plaintiff's claim under the PHRA is referenced herein for notice purposes.  She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC.  Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue letter under Title VII.  Plaintiff's PHRA claims however will mirror identically her federal claims under Title VII.

2

justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny. This Court has supplemental jurisdiction over Plaintiff's future state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

5. Plaintiff is proceeding herein under the Title VII and has exhausted her administrative remedies (with respect to her Title VII claims) by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

**PARTIES**

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendants are nationwide entities with many locations (and operating through different corporate structures) providing waste-management and energy solutions (among other services) related to burning trash that in turn creates steam for electricity.

9. At all times relevant herein, Defendants acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

**FACTUAL BACKGROUND**

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is a female.

12. Plaintiff was employed as a Facility Manager at Defendants' 10 Highland Avenue Chester, Pennsylvania 19013 location beginning in or about September 2019 until her unlawful termination (discussed further *infra*) on or about May 20, 2022.

13. Plaintiff was supervised directly by Defendants' Regional Vice President of Operations, Tim Gregan ("Gregan" – male), and Gregan reported to Senior Vice President of Operations, Rebecca ("Becky") Underwood ("Underwood" – female), to whom Plaintiff indirectly reported.

14. Gregan was not involved in Plaintiff's hiring, and instead Plaintiff was recruited and ultimately hired by Underwood.

15. Upon information and belief, Plaintiff was the **first female hired as a Facility Manager within the history of the entirety of Defendants**.

16. Defendants' divide their business operations into various "regions," and each region has approximately 10 plants.

17. Upon information and belief, Gregan has not utilized or hired females in any Facility Manager role in any of the plants he oversees.

18. During the course of her employment with Defendant, Plaintiff was a hard-working employee who performed her job well.

19. However, Plaintiff's work environment while employed with Defendant became extremely hostile as a result of the discrimination and disparate treatment that she observed and

4

was subjected to by Gregan based on gender. For example, but not intended to be an exhaustive list, unlike Plaintiff's male colleagues, Gregan:

    a. unnecessarily opposed small or significant decisions Plaintiff made;

    b. continually questioned Plaintiff about her work and role;

    c. constantly asked other employees and staff about Plaintiff or tried to create unnecessary issues;

    d. blamed Plaintiff for broad plant issues that either Plaintiff had no control over, or that others above Plaintiff had made executive decisions regarding;

    e. treated other female employees of Defendant in a demeaning manner, and forced at least two female employees to do demeaning tasks for Gregan personally that were not part of their job duties[2] and Plaintiff witnessed these female employees cry on the job based on Gregan's demeaning treatment;

    f. treated Plaintiff in a really demeaning and antagonistic manner; and

    g. engaged in many other actions or inactions that made it clear Gregan preferred Plaintiff not work in her role (unrelated to Plaintiff's job performance or expertise).

20. Additionally, Gregan literally refused to talk to Plaintiff because she was a female, and frequently completely ignored Plaintiff and instead spoke only to male colleagues and subordinates.

21. Specifically, Gregan frequently bypassed passing directions/speaking to Plaintiff and instead directly directed *her* male subordinates on tasks which should have properly been assigned by Plaintiff.

22. This caused confusion as to who actually directly supervised these male subordinates (it was Plaintiff who was their direct supervisor, not Gregan) and cultivated a

---

[2] Examples of demeaning tasks Gregan forced female employees to do include but are not limited to: assisting Gregan with changing passwords on his personal cell phone, assisting in troubleshooting of IT issues off hours and on weekends, picking Gregan up after he dropped his vehicle off for an oil change, and shopping for personal items for Gregan.

5

culture of a lack of respect for Plaintiff and her position as a supervisor.

23. Gregan made negative comments about Plaintiff to regional and corporate high-level employees of Defendants such as she was "out of the loop."

24. Plaintiff frequently expressed concerns with Defendants' management about Gregan's abuses, bullying, accusations, and discriminatory treatment, but nothing meaningful was done to address Plaintiff's concerns.

25. Plaintiff specifically frequently raised concerns of Gregan's treatment to Underwood who agreed that Gregan was discriminatory against females, but instead of meaningfully addressing Plaintiff's concerns in any way, informed Plaintiff there was "not much" that could be done as Defendants were a "good old boys club," and advised Plaintiff to be "patient," and "resilient."

26. In or about April of 2022, Plaintiff formally escalated concerns of gender discrimination to Defendants' management and made overwhelming clear that: (a) Plaintiff wanted her work situation remedied; and (b) there was what Plaintiff perceived to be blatant **gender** discrimination at Defendants.

27. To insulate itself from potential legal claims or liability, Defendant ostensibly retained the law firm of Littler Mendelson. This law firm, through its counsel, engaged in what it referenced as an "investigation" and attempted to dissuade Plaintiff from her beliefs of gender discrimination (through such counsel).

28. Following Plaintiff's serious escalations of gender discrimination and information that human resources and Underwood had not resolved her work environment under Gregan, Underwood began retaliating against Plaintiff and acted <u>very upset</u> with and cold towards Plaintiff.

6

29. In the spring of 2022 (pre-escalation of Plaintiff's gender complaints), Underwood discussed her intent to elevate/promote Plaintiff's role and to have Plaintiff work directly with Underwood's team (indicating Plaintiff was a tremendous asset to the company). Post-complaints in the spring of 2022, Underwood exclaimed "why would you make these types of complaints while I was considering moving you to my team?" Her consideration of Plaintiff for elevation/promotion immediately ceased.

30. As soon as the gender discrimination investigation concluded, Plaintiff was terminated by Respondent effective May 20, 2022.

31. However, on paper, Defendant indicated it was paying Plaintiff through July of 2022 (as if employed only for compensation purposes).

32. While Gregan was nasty to Plaintiff on a continuing basis for years, Plaintiff still received *at least* meets expectations evaluations and did not have progressive discipline.

33. Moreover, Plaintiff had no warning of any basis for her pretextual termination from employment.

34. Upon termination, Plaintiff was told there were some equipment problems in her plant, and she was being held accountable – and as a result – Defendants decided to terminate her employment.

35. This is clearly pretextual, as every plant has mechanical or equipment problems at times, which in this instance were not the fault or doing of Plaintiff, and attributing this to Plaintiff without warning was retaliatory.

36. Further and even more telling of clear pretext, these alleged equipment problems occurred *prior to* the Spring 2022 conversations wherein Underwood discussed her intent to elevate/promote Plaintiff (i.e. even knowing of these equipment problems, pre-complaint of

discrimination, Underwood still conveyed her intention to elevate/promote Plaintiff) and *prior to* Plaintiff's complaints, yet Plaintiff was not disciplined or terminated at any point between the alleged equipment problems and her formal complaint of gender discrimination and hostile work environment.

37. Additionally, Plaintiff was offered 12 weeks of severance compensation (effective after her July pay end date), which was **not** pursuant to any document or policy of Defendants – solely in exchange for Plaintiff's waiver of legal claims. This is well established evidence of discrimination, retaliation, and pretext.[3]

38. Plaintiff believes and therefore avers that she was subjected to a hostile work environment, retaliated against, and ultimately terminated from her employment with Defendants in violation of Title VII.

## Count I
## Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
### ([1] Gender Discrimination [2] Hostile Work Environment & [3] Retaliation)

39. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

40. While employed by Defendant, Plaintiff was personally subjected to a hostile work environment because of her gender through disparate and demeaning treatment, as well as discriminatory harassment.

---

[3] *See e.g. Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115 at **14-15 (E.D. Pa. 2013)(an employer who offered severance at the time of termination when policies did not require upon condition of waiving claim supported finding of pretext among other facts); *Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011)(finding that a severance agreement offered contemporaneously to when the employee was terminated was "probative on the issue of whether NIBCO's motive for terminating Bartlett was [false]."); *EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267 (D. Nev. 2009)(denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy); *Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085 (W.D. Wash. 2011)(severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by Fed.R.Evid. 408); *Brandy v. Maxim Healthcare Servs., Inc.*, 2012 WL 5268365, at *2 (N.D. Ind. 2012)(holding that severance agreements offered at the time of termination do not fall under Rule 408 because they are offered before a dispute arises, regardless if the employer "anticipated the severance agreement curtailing any potential future litigation.").

41. The harassment that Plaintiff was subjected to as a female employee of Defendant was severe and pervasive and interfered with her ability to perform her job tasks.

42. Plaintiff complained of and objected to the aforesaid gender-related discriminatory and disparate treatment multiple times to members of Defendants' management and HR in advance of her termination, and asked for the same to cease; however, her concerns were never remedied, and the discriminatory harassment/retaliation only grew worse.

43. Shortly after her complaints of discrimination, Plaintiff was terminated for pretextual reasons, and offered an unsolicited severance in exchange for waiving her legal rights against Defendants.

44. These actions constitute discrimination, retaliation, and a hostile work environment under Title VII.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation at the hands of Defendants until the date of verdict;

B. Plaintiff is to be awarded punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C.	Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

D.	Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

E.	Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

F.	Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF, & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
Allison A. Barker, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020

Date: August 24, 2022

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Heather Needham  :  CIVIL ACTION

v.  :

Covanta Energy, LLC, et al.  :  NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (X)

| 8/24/2022 | [signature] | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 9 Brighton Way, Chester Springs, PA 19425

Address of Defendant: 445 South Street, Morristown, NJ 07960

Place of Accident, Incident or Transaction: Defendants place of business

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes [ ]  No [X]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes [ ]  No [X]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes [ ]  No [X]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes [ ]  No [X]

I certify that, to my knowledge, the within case [ ] is / [X] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 8/24/2022   _____(signature)_____   ARK2484 / 91538
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

A. *Federal Question Cases:*
1. [ ] Indemnity Contract, Marine Contract, and All Other Contracts
2. [ ] FELA
3. [ ] Jones Act-Personal Injury
4. [ ] Antitrust
5. [ ] Patent
6. [ ] Labor-Management Relations
7. [X] Civil Rights
8. [ ] Habeas Corpus
9. [ ] Securities Act(s) Cases
10. [ ] Social Security Review Cases
11. [ ] All other Federal Question Cases
*(Please specify):* _____

B. *Diversity Jurisdiction Cases:*
1. [ ] Insurance Contract and Other Contracts
2. [ ] Airplane Personal Injury
3. [ ] Assault, Defamation
4. [ ] Marine Personal Injury
5. [ ] Motor Vehicle Personal Injury
6. [ ] Other Personal Injury *(Please specify):* _____
7. [ ] Products Liability
8. [ ] Products Liability – Asbestos
9. [ ] All other Diversity Cases
*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Ari R. Karpf, counsel of record *or* pro se plaintiff, do hereby certify:

[X] Pursuant to Local Civil Rule 53.2, § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[ ] Relief other than monetary damages is sought.

DATE: 8/24/2022   _____(signature)_____   ARK2484 / 91538
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
NEEDHAM, HEATHER

**(b)** County of Residence of First Listed Plaintiff: Chester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

## DEFENDANTS
COVANTA ENERGY, LLC, ET AL.

County of Residence of First Listed Defendant: Morris
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | | | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | | 368 Asbestos Personal Injury Product Liability | | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 340 Marine | | | 835 Patent - Abbreviated New Drug Application | 460 Deportation |
| | 345 Marine Product Liability | **PERSONAL PROPERTY** | | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | 480 Consumer Credit |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 710 Fair Labor Standards Act | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 190 Other Contract | 360 Other Personal Injury | 380 Other Personal Property Damage | 720 Labor/Management Relations | 862 Black Lung (923) | 850 Securities/Commodities/ Exchange |
| 195 Contract Product Liability | | 385 Property Damage Product Liability | 740 Railway Labor Act | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| 196 Franchise | 362 Personal Injury - Medical Malpractice | | 751 Family and Medical Leave Act | 864 SSID Title XVI | 891 Agricultural Acts |
| | | | | 865 RSI (405(g)) | 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 790 Other Labor Litigation | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | 791 Employee Retirement Income Security Act | 870 Taxes (U.S. Plaintiff or Defendant) | 896 Arbitration |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | 871 IRS—Third Party 26 USC 7609 | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 230 Rent Lease & Ejectment | [X] 442 Employment | 510 Motions to Vacate Sentence | | | |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | | | 950 Constitutionality of State Statutes |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 535 Death Penalty | **IMMIGRATION** | | |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** | 462 Naturalization Application | | |
| | 448 Education | 540 Mandamus & Other | 465 Other Immigration Actions | | |
| | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII (42USC2000)
Brief description of cause:
Violations of Title VII and the PHRA.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 8/24/2022
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE