**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HEATHER NEEDHAM,** | : | |
| *Plaintiff*, | : | |
| | : | |
| **v.** | : | **CIVIL NO.  22-3392** |
| | : | |
| **COVANTA ENERGY, LLC, DELAWARE** | : | |
| **VALLEY RESOURCE RECOVERY** | : | |
| **FACILITY, and COVANTA PROJECTS,** | : | |
| **LLC,** | : | |
| *Defendants*. | : | |

**MEMORANDUM OF LAW**

Plaintiff Heather Needham brought an action against Defendants Delaware Valley Resource Recovery Facility, Covanta Energy, LLC, and Covanta Projects, LLC (collectively the "Defendants") alleging gender discrimination, hostile work environment, and retaliation under the Civil Rights Act Title VII ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). Defendants filed a motion for summary judgment against all claims. For the below reasons, Defendants' motion is granted with respect to Plaintiff's gender discrimination and hostile work environment claims but denied for the retaliation claims.

**BACKGROUND**

This Court will not go into a complete recitation of the facts, but provides an overview of the facts forming the bases of this opinion. Plaintiff was employed by Defendants as the Delaware Valley facility manager from September 9, 2019 until May 20, 2022. Pl. Statement of Facts at 3 (ECF No. 33). The Delaware Vally plant processes waste to generate electricity that is then sent to the power grid. Id. Plaintiff reported to Tim Gregan, the Regional Vice President of

1

Operations. Id. Rebecca Underwood, Gregan's supervisor and Senior Vice President of

Operations, hired Plaintiff. Def. Mot. For Summ. J. at 7 (ECF No. 31) (hereinafter "Def. Mot.").

**I.   Plaintiff Claimed that Gregan Treated Her Differently on the Basis of Gender.**

Plaintiff alleged that she felt Gregan treated her differently than male counterparts,

treated other women employees in a discriminatory manner, excluded Plaintiff from work social

events, undermined and subverted Plaintiff's leadership by "going over [Plaintiff's] head to give

direction to [Plaintiff's] employees," and scrutinized, micromanaged, and criticized Plaintiff's

work more than he did the other male facility managers. Pl. Statement of Fact at 6-8, 14-15.

Further, a regional team was tasked with traveling between the different facilities to offer

assistance, and Plaintiff maintained that Gregan instructed the regional team to take over

Plaintiff's responsibilities and authority. Id. at 10. Despite Plaintiff asking Gregan to

communicate directly with her, as opposed to going over her head, Gregan's conduct did not

improve. Id. at 11.

Michael Huston, a manager at the Delaware Valley facility, claimed that Gregan "would

go over [Plaintiff's] head and directly advise employees below her in the chain of command" and

would reject Plaintiff's ideas but accept, implement, and praise those same ideas if offered from

a male employee. Huston Aff. (ECF No. 33-11).

Plaintiff averred that in a conversation with Underwood, Underwood said "I know

Gregan doesn't treat women well. This is a good ole boys' club. . .". Pl. Statement of Fact at 8.

Plaintiff also claimed that Gregan said "I gotta watch what I say around you. You're a woman. I

can't really talk to you like I talk to everybody else." Pl. Resp. to Def. Mot. For Summ. J. at 16

(ECF No. 33-2) (hereinafter "Pl. Resp."). Gregan also asserted in his deposition that he gave Plaintiff "more space" in her facility manager role. Id.

In March 2022, Plaintiff discussed with Underwood the potential of moving to another position within the company. Id. at 17-18. Plaintiff said that Underwood invited Plaintiff to work on her staff. Id. On March 11, 2022, Plaintiff approached Adrienne Christmas, a human resources employee, and verbally complained of Gregan's gender discrimination, which was not investigated according to Plaintiff. Pl. Statement of Facts at 19. On April 4, 2022, Plaintiff made a second complaint alleging discrimination in an email sent to Underwood. Id. at 20-21. Defendant hired a law firm to investigate Plaintiff's complaint, and after the investigation closed Plaintiff was fired on May 20, 2022. Id. at 22-25.

## II.    Defendant Asserted Plaintiff's Work Performance was the Basis for Her Firing.

Defendant claimed that Plaintiff's performance, not Gregan's alleged discrimination, was the reason for her firing. Defendant asserted that Plaintiff's "lack of engagement with employees, lack of presence on the plant floor or 'in the field,' and an 'overall disengagement from the operations of the plant,'" as well as her "resistance to accept help from the Regional Team, her poor communication skills, insubordination, and lack of technical knowledge" all contributed to her firing. Def. Mot. at 9, 17-18. Defendant referred to multiple metrics of Plaintiff's performance (e.g., boiler availability, power, metal recovery, safety, environmental compliance, and continuous improvement targets) to support its position. Id. at 9-10. For example, Defendant noted that Plaintiff's plant had substantial unscheduled outages for unplanned repairs to equipment, which cost the Company greatly. Id. at 10. Due to Plaintiff's status as a high-level management employee, Defendant opted to have Plaintiff coached by Gregan rather than

document a formal disciplinary review. Id. at 10-11. Yet, Defendant posited that Plaintiff's poor performance was nonetheless documented in her evaluations. Id. at 11-12. Based on its evaluations of Plaintiff, Defendant claimed to have made the decision to fire her in March 2022. However, Defendants did not actually do so until May 20, 2022.

Moreover, Defendant noted that Gregan is intimately familiar with the inner workings and operations at Delaware Vally plant because he used to hold Plaintiff's position at the plant. Def. Reply at 8-9 (ECF No. 42). Defendants also argued that Gregan treated numerous Covanta employees, regardless of gender, similarly. Def. Mot. at 13. Defendant noted that even Plaintiff admitted Gregan was an "equal opportunity abuser." Id. at 18. For instance, when discussing the gender discrimination investigation with Stacy Mozzoni, another Covanta employee, Ms. Mozzoni said Gregan "does not discriminate against women, he's just an ass" to which Plaintiff responded, "Well, I know that but I had to say something that would stick." Ex. 22, Mozzoni Dep. at 35:15-23; Def. Mot. at 18.

## STANDARD

Summary judgment is warranted "if the movant shows there is no genuine dispute as to any material fact and the movement is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The nonmovant can defeat summary judgment by alleging "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A factual dispute is genuine if evidence in the record would permit a reasonable jury to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome. *Id.* The nonmovant must show more than a "mere scintilla of evidence" to defeat summary judgment. *Id.* at 252. This Court views all facts in light most favorable to Plaintiff and draws reasonable inferences for Plaintiff. *SodexoMAGIC, LLC v.*

*Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022). Credibility determinations and weighing of the

evidence are matters reserved to the jury. *Anderson*, 447 U.S. at 255.

## DISCUSSION

### I.    Plaintiff's Gender Discrimination Claim Fails to Demonstrate Pretext.

Because Plaintiff does not present "direct" evidence of discrimination and is proceeding

under a pretext theory, her claims are analyzed using the burden-shifting framework in

*McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973).[1] Plaintiff must first establish a prima

facie case of discrimination, which "is not intended to be onerous." *Sempier v. Johnson &*

*Higgins*, 45 F.3d 724, 728 (3d Cir. 1995). If Plaintiff establishes a prima facie case, then the

burden shifts to Defendants to produce "a legitimate nondiscriminatory reason for the adverse

employment action." *Willis v. UPMC Children's Hosp. of Pitts.*, 808 F.3d 638, 644 (3d Cir.

2015). Defendants have a "relatively light" burden to produce evidence that would permit the

conclusion that there was a non-discriminatory reason for the decision to fire Plaintiff. *Fuentes v.*

*Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Defendants need not show that its proffered reason

actually motivated the firing decision, only that its reason could have motivated its decision. *Id.*;

*Iadimarco v. Runyon*, 190 F.3d 151, 157 (3d Cir. 1999). If Defendants satisfy their production

burden, then Plaintiff must produce evidence that either (i) casts "substantial doubt" on the

Defendants' proffered reasons such that a factfinder could reasonably conclude that Defendants'

reasons were false, or (ii) permits a factfinder to infer that Defendants discrimination was "more

likely than not a motivating or determinative cause of the adverse employment action." *Fuentes*,

32 F.3d at 762, 765.

---

[1] Courts in this circuit have analyzed PHRA discrimination claims in the same way as analogous claims under the PHRA's federal counterparts. *See Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 318 (3d Cir. 2008); *see also Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) ("Claims under the PHRA are interpreted coextensively with Title VII claims." (quoting *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n. 6 (3d Cir.2006))). Therefore, all Plaintiff's Title VII and PHRA claims will be analyzed the same.

a. *Plaintiff established a prima facie case of gender discrimination.*

To establish a prima facie case of gender discrimination, Plaintiff must demonstrate (1) she was a member of a protected class; (2) she was qualified for the job position; (3) she suffered an adverse employment decision; and (4) there is a causal nexus between her gender and the adverse employment action. *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008).[2] A plaintiff may establish a causal nexus using circumstantial evidence, such as demonstrating less favorable treatment compared to similarly situated employees not in the same protected class. *Doe*, 527 F.3d at 366.

To establish a causal nexus between her gender and firing, Plaintiff offered several pieces of evidence. Plaintiff claimed that Gregan told her "I gotta watch what I say around you. You're a woman. I can't really talk to you like I talk to everybody else." Pl. Resp. at 16; Pl. Dep. at p. 178:8-12 (ECF No. 31-6). Gregan also stated he gave Plaintiff "more space" to perform her position as facility manager. Gregan Dep. at p. 79: 17-24 (ECF No. 33-8). Huston claimed that Gregan "would go over [Plaintiff's] head and directly advise employees below her in the chain of command" and would reject Plaintiff's ideas but accept, implement, and praise those same ideas if offered from a male employee. Huston Aff. Plaintiff also described how other male employees—though not all of which are comparator employees—had not been fired despite some performance issues. Pl. Resp. at 10-11. In addition, Plaintiff pointed out that she was terminated on May 20, 2022—weeks after her April 4, 2022 email to Underwood claiming gender discrimination—and she was replaced by a male employee. Pl. Resp. at 9-10; Ex. M Email to Underwood. Therefore, Plaintiff has established a causal nexus and asserted a prima facie case of gender discrimination.

---

[2] Elements 1-3 are satisfied because it is uncontested that Plaintiff is a woman and member of a protected class, that she was qualified for the Delaware Valley facility manager position, and that she was fired on May 20, 2022. Underwood Dep. (ECF No. 31-3) at p. 24:16-24; Pl.'s Dep. at p. 32:24-33:7 (ECF No. 31-6).

6

       *b. Defendants adequately produced legitimate, non-discriminatory reasons for*
           *Plaintiff's firing.*

     Defendants, in response to Plaintiff's prima facie case, asserted legitimate, non-discriminatory reasons for Plaintiff's firing. Defendants pointed to the Delaware Valley facility's "egregious amount of unscheduled outage days, Plaintiff's resistance to accept help from the Regional Team, her poor communication skills, insubordination, and lack of technical knowledge" all as reasons for Plaintiff's firing. Def. Mot. at 17-18.

       *c. Plaintiff failed to establish pretext.*

     Plaintiff failed to establish Defendants reasons for firing were pretextual. Plaintiff relies on *Sempier v. Johnson & Higgins* and *Brewer v. Quaker State Oil Refining Corp.* to argue that the record evidence does not demonstrate that she performed poorly at work. Pl. Resp. at 17. In *Sempier*, the Court reversed the district court's ruling that the employee had not established pretext. *Sempier*, 45 F.3d at 731-33. The Court noted that the employer failed to produce record evidence of the employee's poor work performance, despite the employer's argument that its motive for firing the employee was poor performance and not age discrimination. *Id*. Similarly in *Brewer*, the employer asserted that it fired the employee because of poor job performance "which the [employer] had long overlooked or tolerated." *Brewer*, 72 F.3d at 332-33. In contrast, the record evidence of the employee's "twenty-three years of consistently good sales performance and recent merit bonuses cast sufficient doubt on [the employer's] contention that [the employee] was discharged because of poor job performance." Id. at 333. Defendants distinguished *Sempier* and *Brewer* from the instant matter by supplying documentary evidence that Plaintiff's performance, in part, "does not meet expectations" and that the Delaware Valley

facility incurred too many unplanned outages and safety incidents. Pl. Resp. at 10; Def. Reply at 8-9.

Moreover, in response to Plaintiff's argument that Defendants did not fire other poorly performing male employees, Defendants explained that those other male employees either were not comparators to Plaintiff, were moved to other open positions available at the time, or Gregan did not have control over their employment status because they worked outside his region. Def. Reply at 8. Defendants pointed out that Plaintiff's sole comparator (a male facility manager in Gregan's region) was in fact fired for his poor work performance just like Plaintiff. Id. at 7-8. Further, Plaintiff acknowledged that Gregan's criticism of her performance could have stemmed from his more intricate knowledge of the Delaware Valley plant because he was the former facility manager. Def. Reply at 8.

Despite Defendants contended reasons for firing Plaintiff, Plaintiff asserted that her firing was nonetheless pretextual because she was given a severance package. Pl.'s Resp. at 18. At the time of Plaintiff's firing, Defendants offered Plaintiff a severance package and payment for her availability to help transition the incoming facility manager. Id. at 14-15. Plaintiff argued the severance, which Defendants had no practice of doing, was offered in exchange for waiver of legal claims. Id. at 14. Yet, Plaintiff did not offer concrete evidence that Defendants had no practice of offering severance, and in fact, Christmas, the HR employee, stated severance was "standard protocol" based on length of service and level in the organization. Christmas Dep. at p. 55:6-9.

Plaintiff also alleged that Defendants did not follow the company's own graduated disciplinary procedures. Pl. Resp. at 18. Defendants rebutted that Plaintiff was offered coaching and counseling "in lieu of progressive discipline" and that it was company practice to do so. Def.

Mot. at 12. Defendants demonstrated this practice by citing the example of a male facility manager who was terminated for performance issues, and similarly did not receive written discipline prior to termination. Id.

And although Huston's affidavit statements contributed to establishing Plaintiff's prima facie case of gender discrimination, Huston's statements are not specific enough to establish pretext. Rather, his claims—that Gregan would subvert Plaintiff's authority and accept ideas from male employees that Plaintiff had offered first—are conclusory of the issue of gender discrimination and fail to demonstrate, through specific facts, that the Defendants' decision to fire Plaintiff are pretextual in nature. Thus, Huston's statements fail to allege pretext sufficiently at the summary judgment stage for a gender discrimination claim.

Finally, Plaintiff's subjective belief that she felt Gregan was treating her differently was unsupported by way of specific examples of how other male facility managers were treated comparatively. Therefore, Plaintiff did not establish pretext by casting "substantial doubt" on Defendants proffered reasons for her firing, nor did she establish that her gender was more likely than not a motivating or determinative factor in her firing. Consequently, Defendants' motion for summary judgment is granted with respect to her gender discrimination claims.

## II.    Plaintiff Failed to Allege a Hostile Work Environment.

To succeed on a hostile work environment claim, Plaintiff must prove: (1) intentional discrimination based on her membership in a protected class; (2) severe or pervasive conduct; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability exists. *Kunin v. Sears Roebuck & Co.*, 175 F.3d 298, 293 (3d Cir. 1999). The hostile work environment must be severe or pervasive enough to "alter the conditions of the victim's employment and

create an abusive working environment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002). Courts consider all the incidents when assessing a hostile work environment. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1485 (3d Cir. 1990). Offhand comments and isolated incidents, unless extremely serious, do not create a hostile work environment. *Caver v. City of Trenton*, 420 F.3d 243, 263 (3d Cir. 2005).

Plaintiff's evidence is not enough to establish severity or pervasiveness. She contended that, subjectively, she felt Gregan had discriminated against her because of her gender. See e.g. Pl. Dep. at p. 294:22-295:19, p. 377:22-378:2. Gregan admitted to giving Plaintiff "more space" in her supervisory role. Pl. Resp. at 25. Gregan also said to Plaintiff "I gotta watch what I say around you. You're a woman. I can't really talk to you like I talk to everybody else." Id. She also claimed that Gregan did not invite her to dinners and social events. Id. Plaintiff's evidence does not constitute severe or pervasive conduct related to her gender, such that her employment conditions had been altered. *See e.g., Koschoff v. Henderson*, 109 F. Supp. 2d 332, 346 (E.D. Pa. 2000) (stating "conduct motivated by a bad working relationship is not gender discrimination"). In fact, Plaintiff herself stated Gregan was "an equal opportunity abuser," explained he "can be a very difficult person to work with," and that Gregan verbally abused both her male and female subordinates. Def. Mot. at 27; Pl. Dep. at p. 209:16-24, p. 210: 1-4, p. 227: 10-13; *see Koschoff*, 109 F. Supp. 2d at 346-47 (denying a hostile work environment claim because, among other things, management harassed "men in roughly the same proportion"). Therefore, Defendants' motion for summary judgment is granted with respect to Plaintiff's hostile work environment claims.

III.    **A Genuine Dispute of Material Fact Exists for Plaintiff's Retaliation Claims.**

To survive a motion for summary judgment on a retaliation claim, a plaintiff must prove (1) they engaged in protected activity, (2) the employer took an adverse employment action against the plaintiff, and (3) there was a causal connection between the plaintiff's protected activity and the adverse employment action." *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006).[3] However, this Court need not walk through the retaliation elements because a genuine dispute of material fact exists as to when Defendants made its decision to terminate Plaintiff.

Defendants claimed that the decision to fire Plaintiff was made in March 2022. Def. Mot. at 8. As proof of this claim, Defendants alleged that Underwood had asked Larry Smith in March 2022 whether he would consider becoming the Delaware Valley facility manager. Def. Mot. at 30. In addition, Defendants claimed "Christmas' February 2022 calendar notes and email with open positions to Underwood" reflected Defendants' intent to place Plaintiff in another role (which Defendants characterized as an "adverse employment action") prior to Plaintiff's April 4, 2022 email. Id. Defendants reasoned that in March 2022, Underwood determined that "no open positions suited Plaintiff's skills or experience" and that Plaintiff would be fired, but Plaintiff was not actually fired until May 20, 2022 because Defendants "needed to figure out the backfill procedure." Id. Thus, Defendants argued, Plaintiff's "retaliation claim fails because her termination was untethered from her emailed complaint to Underwood on April 4, 2022." Id.

On the other hand, Plaintiff argued that the decision to fire her was made shortly after she made a verbal gender discrimination complaint to Christmas on March 11, 2022 and emailed a gender discrimination complaint to Underwood on April 4, 2022. Pl. Resp. at 10. Plaintiff

---

[3] It is not in dispute that Plaintiff engaged in a protected activity when she sent her email on April 4, 2022 to Underwood claiming gender discrimination, and that Defendants fired Plaintiff on May 20, 2022

pointed out that no defense witnesses were able "to give an exact date" of when Defendants made the decision to fire Plaintiff. Id.; Pl. Statement of Facts at 29-30. Moreover, Plaintiff argued that Underwood was attempting to find her another position within the company, and it was only after Plaintiff made her gender discrimination complaints that Defendants chose to fire her. Pl. Statement of Facts at 29. Plaintiff also pointed to Defendants' interrogatory responses as proof that they chose to fire her after her discrimination complaints. Id. at 31. In response to Plaintiff's requests for the reasons for her firing, Defendants included reference to events that occurred *after* Plaintiff made her gender discrimination complaints. Id. Thus, Plaintiff argued Defendants falsely maintained that they decided to fire Plaintiff before her complaints of gender discrimination, but they actually made that decision after Plaintiff's gender discrimination complaints. Pl. Statement of Facts at 29.

Here, whether Defendants decided to fire Plaintiff before or after her March 11 and April 4, 2022 complaints of gender discrimination is a material fact in dispute that precludes summary judgment. If Defendants had truly decided to take an adverse employment action against Plaintiff before her complaints of gender discrimination, then Plaintiff's complaints could not have constituted the underlying protected activities serving as the basis of Defendants' alleged retaliation. This fact is crucial to establishing causation (a necessary element) in a retaliation claim. Depending on which party a jury finds credible, this fact could affect the outcome of Plaintiff's retaliation claims and permit a reasonable jury to find for her. The timing of Defendants' decision to take an adverse employment action against Plaintiff is a hotly contested factual issue. Therefore, Defendants' motion for summary judgment is denied with respect to Plaintiff's retaliation claims.

## CONCLUSION

For the forgoing reasons, Defendants' motion for summary judgment is granted with respect to Plaintiff's gender discrimination and hostile work environment claims. Defendants' motion for summary judgment is denied for Plaintiff's retaliation claim. An appropriate order follows.

**BY THE COURT:**

**HON. KAI N. SCOTT**
**United States District Court Judge**

13